## BOGIA *vs.* DARDEN AND WIFE.

[FINAL SETTLEMENT OF GUARDIAN'S ACCOUNTS.]

1. *Ex-parte statement of account against non-resident guardian.*—To sustain an *ex-parte* settlement of a guardian's accounts and vouchers, on the ground that he has removed from the State without making a settlement, (Code, § 2038,) the record must affirmatively show the fact of his removal, and a compliance with the requisitions of the statute as to the publication of notice against him. A recital in the order directing the publication of notice, that it appeared to the court, "from an inspection of the petition," that the guardian had removed from the State, is not sufficient proof of the fact of removal, when the petition is not under oath; and a recital in the final decree, that it appeared to the court, "from satisfactory proof, that said guardian has had notice, by publication and otherwise, and as directed in the former order of this court," is not sufficient proof of publication, when the former order does not specify the length of time the notice is to be published.

APPEAL from the Probate Court of Macon.

IN the matter of the final settlement of the accounts and vouchers of Peter Bogia, as guardian of Ellen Darden, formerly Ellen Holman, now the wife of Henry C. Darden. The ward's petition for the settlement, which was signed by her attorney, and was not under oath, alleged, that letters of guardianship were issued to said Bogia, by said probate court, on the 14th September, 1854; that he received on the 1st March, 1857, the sum of six hundred and forty-two dollars, belonging to his said ward; that he had never made any statement or settlement of his accounts that he had removed from Alabama, and that he resided in Florida. At a special term, held on the 6th September, 1867, the day on which the petition appears to have been filed, the following order was made :

"This day came Ellen Darden, formerly Ellen Holman, by her attorney, and moves the court to proceed and state the accounts of Peter Bogia, the guardian of said Ellen in this court. And it appearing to the court, from an inspec-

tion of the petition on which said motion is made, that said Bogia, guardian as aforesaid, has removed from the State, without having a settlement of his said guardianship; the court now proceeds to state said account against him, from materials in the office of the judge of this court, and from such other information as may be accessible to the court; charging him with such articles or moneys as may have come into his hands, and crediting him with all the credits to which he may be entitled, so far as known to the court. And the said account, now being so stated, shows that said Peter Bogia has had in his hands the sum of six hundred and forty-two dollars, and with which it appears that he is justly chargeable in his character as guardian, together with the legal interest on the same, he having made no settlement of his guardianship. It is therefore ordered, that the third Monday in October, 1867, be appointed a day on which to examine, audit, and re-state the account, if necessary, which is hereby ordered to be filed for inspection, exception, and objection. It is further ordered, that notice of the above proceeding be given, by publication in the *Tuskegee News*, a newspaper published in said county, in order that all persons in interest can appear, and contest the same, if they think proper; and that a copy of said published notice be forwarded, post-paid, and properly addressed, to said Bogia, in order that he may show cause, if any he has, why the court should not render a decree against him, in favor of Ellen Darden, (formerly Holman,) in accordance with the account so stated, or as the same may be re-stated on said day, or any other day to which the examining, auditing, and stating of the account may be regularly continued."

The next entry in the transcript, which is entitled in the margin "Copy of published notice," dated said 6th September, 1866, and signed by the probate judge, is as follows: " Peter Bogia, guardian of said Ellen Darden, (formerly Holman,) having removed from the State, and having wholly failed to file any account, or make any settlement of his said guardianship, the said court this day proceeded to state said account from the materials in the office of the judge thereof, and from such other information as has been

accessible to the court. It is therefore ordered by the court, that the third Monday in October be appointed a day on which said account can be examined, audited, and re-stated, if it be found necessary; at which time, all persons in interest can appear," &c. On the 18th October, the cause was continued, and again on the 12th November; and on the 19th December, 1866, the following decree was rendered: "This being the day regularly appointed by a former order of this court, made and entered on the 16th day of September, 1866, to examine the account heretofore stated by the court against Peter Bogia, the guardian of said Ellen Darden, (formerly Holman,) and to audit and re-state the same, if it should be necessary; now comes the said Darden, by her attorney, and moves the court for a decree upon said account, as the same, upon re-auditing, now stands stated; and it appearing to the court, from proof satisfactory to the court, that said Bogia has had notice, by publication and otherwise, and as directed in said former order of this court; and no objection, or exception, as to the said account, as heretofore stated by the court, having been filed, and none now being made known to the court,—it is ordered, adjudged, and decreed by the court, that Henry C. Darden, for the use of his wife, Ellen Darden, (formerly Holman,) do have and recover from said Peter Bogia the sum of one thousand and fifty-one 52-100 dollars, (that amount being now adjudged by the court to be due from Peter Bogia, as such guardian of said Ellen Darden, formerly Holman,) besides the costs of this proceeding; for which execution may issue."

The decree of the court is now assigned as error.

G. D. & G. W. HOOPER, for appellant.—The record should affirmatively show a compliance with all the requisitions of the statute as to the publication of notice, as in case of non-resident defendants in chancery, and that the guardian had in fact removed from the State.—*Wright v. Clough,* 17 Ala. 490; *Hartley v. Bloodgood,* 16 Ala. 238; *Butler v. Butler,* 11 Ala. 668; 3 Phil. Ev. 1002; 11 Wendell, 651; 31 Maine, 267; 11 Humph. 71; *Cullum v. Branch Bank at Mobile,* 23 Ala. 797.

W. C. McIVER, *contra.*—When a guardian removes from the State, without having made a final settlement of his accounts, no notice to him, by publication or otherwise, is required by the statute.—Code, § 2037 ; *Wright v. Clough,* 17 Ala. 490. The regularity of the proceedings is sustained by the case of *Croft v. Ferrell,* 21 Ala. 351.

BYRD, J.—When a guardian removes from the State, without making final settlement, the judge of probate is authorized to state an account in his absence, from the materials in the office, and such testimony as may be adduced.—Code, § 2038. In the settlement of the accounts of guardians, and in all the preparatory proceedings thereto, the law providing for the settlement of the accounts of executors and administrators, so far as applicable, is in full force against guardians and their sureties, if not in hostility to any provision of chapter 3d, title 5, part 2 of the Code.—Code, § 2039. If any executor, or administrator, fails to make settlement as required by section 1876 of the Code, the court may state the account against him, from the materials in the office, or such other information as may be accessible to the court, charging him with such articles as may have come to his hands.—Code, § 1878. After stating such account, and giving notice of the same by publication, as in case of other settlements, the court must proceed to examine the account, audit, and re-state the same, if necessary.—Code, § 1879. The court, after stating such account, must render a decree thereon, in favor of the remaining, or any succeeding executor or administrator ; or, if the estate can be finally closed on such settlement, must render decrees as on a final settlement thereof.—Code, § 1881. Section 1880 provides for a contest of the account stated under the provisions of sections 1878 and 1879. Upon the filing of an account, vouchers, evidence, and statement for a final settlement, the judge of probate is required to appoint a day for such settlement, and must give notice of the same, by publication in some paper published in the county, if there is one so published, for three successive weeks.—Code, § 1805. Such notice must state the name of the executor, or administrator, the name of

the deceased, and the day appointed for settlement; and if the settlement is proposed to be final, it must be so stated.— Code, § 1806.

We have stated, substantially, so much of the Code as is necessary for the decision of the questions raised on the record and argued by counsel. It is insisted by counsel for appellant, that the court below erred in rendering a decree final, for the reasons, that the record does not show that appellant had removed from the State; and that, if it did, it does not show that publication was made as required by the foregoing provisions of the Code. This settlement would be held good on a collateral attack, under the decisions of this court; but can it be sustained upon a direct attack on appeal? The record does not disclose any evidence to show that the appellant had removed from the State, and the recitals in the several decrees do not refer to any. The only reference is to the petition of the ward, which is not verified by oath or affidavit. The order of publication does not require the notice to be published for any definite or indefinite period of time; nor does the decree or record show that the order of publication was published in a newspaper for a longer time than one insertion.

In the case of *Wright v. Clough*, (17 Ala. 490,) this court assimilates these proceedings, under a statute in its provisions similar to the above provisions of the Code, to like proceedings against a *non-resident* defendant to a bill in equity; and it would seem to follow that, where, on appeal, a decree *pro confesso* against a non-resident defendant to such a bill would not be held good, neither would a decree against a *non-resident* guardian, under the same or like circumstances, be held good. We think it clear, upon the authority of the following cases, decided by this court, that neither a decree *pro confesso* in chancery, nor a final decree in the probate court, on a record like this, would be held good on appeal: *Croft v. Terrell*, 15 Ala. 652; *Croft v. Ferrell*, 21 Ala. 355; *Hartley v. Bloodgood*, 16 Ala. 233; *Lyon v. Odom*, 31 Ala. 234; 28 Ala. 265; *Wyatt v. Rambo*, 29 Ala. 510; *Keifer and Wife v. Barney & Bro.*, 31 Ala. 192.

If the appellant had appeared in the court below, on the hearing, and made no objection to the preliminary proceed-

ings in that court, it would have been too late, perhaps, to have made them for the first time in this court. But, where a party seeks to sustain a decree against another, who had no personal notice of the proceeding, the record must affirmatively show, *upon appeal,* the existence of every material fact, prescribed by law, as a pre-requisite to the rendition of the decree; or it is reversible.

Neither the removal of the appellant from the State, nor the publication of the notice for the time, and as prescribed by law, sufficiently appears upon the record to have authorized the probate court to render the final decree in this cause.

It results, that the decree of the probate court must be reversed, and the cause remanded for further proceedings.